**CONSALVO TRUCKING, INC.,**
Plaintiff,

v.

**EXCAVATING AND BUILDING MATERIAL CHAUFFEURS AND HELPERS LOCAL UNION NO. 379, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, & WAREHOUSEMEN OF AMERICA,** Defendant.

Civ. A. 60–824.

United States District Court
D. Massachusetts.
Jan. 19, 1962.

Joseph E. Lepie, Boston, Mass., for plaintiff.

Robert M. Segal, Boston, Mass., for defendant.

CAFFREY, District Judge.

This is an action brought by the plaintiff under 29 U.S.C.A. § 187 to recover damages for unlawful secondary boycott activities engaged in by the defendant in violation of said section. Jurisdiction of this Court is found in 29 U.S.C.A. § 187 (b). By stipulation of counsel the evidence offered at the hearing was limited to the question of liability, evidence of damages being reserved until after a determination of liability has been made. I find that:

1. Consalvo Trucking, Inc., a Massachusetts corporation, is and has been at all material times engaged in the rental of trucks, road construction, and the purchase and sale of fill dirt; during 1960 Consalvo received approximately $110,000 from its business operations, and is and has been engaged at times material in the building and construction industry.

2. Local 379 is an unincorporated association which exists for the purpose of dealing with employers concerning grievances, labor disputes, wage rates, hours of employment, and conditions of work.

3. Local 379 maintains a principal office in Boston, Massachusetts, and has been at times material engaged in Massachusetts in representing and acting for its employee members.

4. At all material times Charles Burns was Secretary-Treasurer and a Business Agent, Frank J. McMorrow was President and a Business Agent, and John Garvey was a Business Agent, for Local 379.

5. Foundation Company of New York (Foundation) is a New York corporation engaged as a general contractor in the building and construction industry, and has been at all times material engaged as the general contractor in the construction of a parking garage under the Boston Common.

6. Jeremiah Sullivan Sons, Inc. (Sullivan) is a Massachusetts corporation engaged as an excavator in the building and construction industry, and has been at all times material engaged under a subcontract with Foundation in the excavation of the Common garage.

7. Ox-Bow, Inc. (Ox-Bow), a Massachusetts corporation, was engaged at all times material in the removal and sale of fill dirt from the Common garage site under a subcontract valued at $100,000 with Sullivan and is and has been engaged in the building and construction industry.

8. At all times material Foundation, Sullivan, Ox-Bow, and Consalvo did not have collective bargaining agreements with Local 379.

9. In April 1960, Consalvo subcontracted with Ox-Bow for the purchase and removal of fill-dirt from the Common garage site.

10. Stephen Hathaway, a free-lance self-styled "commission agent," and Louis Flagg, a "dispatcher," at all times material acted as managerial representatives of Ox-Bow at the garage site.

11. For some time prior to April 20, 1960, Local 379 had endeavored to induce Consalvo to execute a union contract, although Local 379 had not been certified under Section 9 of the National Labor Relations Act, 29 U.S.C.A. § 159, as a representative of Consalvo's employees. Consalvo, his father, and brother were former members of Local 379 who had fallen into a delinquent status before April 1, 1960.

12. On April 20, 1960, Burns went to the garage site and had a conversation with Hathaway and Flagg. In substance, Burns advised them that if Sullivan, through its subcontractor Ox-Bow, allowed Consalvo and its employees to continue to work on the job while Consalvo remained non-union and persisted in its refusal to execute a contract with Local 379, Burns would have to "pull the job." This undeniably was a threat to remove all union employees from the project if Consalvo was allowed to remain. Because of this warning Hathaway instructed Flagg to put Consalvo off the job and this was done immediately by Flagg.

13. This threat by Burns was the execution of a threat made by Garvey to Consalvo on or about April 15, 1960, when Garvey, in substance, told Consalvo that if he did not sign a union contract he would not work at either the East Boston Tunnel or the Common garage.

■ 14. It is beyond cavil that the object of these statements by Burns and Garvey was to induce Consalvo to bargain with Local 379 and to coerce Sullivan, Ox-Bow, and all other union subcontractors on the Common garage job to cease removal of fill from the project and cease delivering fill to Consalvo's trucks unless Consalvo executed a union contract. This is a clear violation of Section 8(b) (4) (i) (B) of the Act. Local 1976, United Brotherhood of Carpenters v. National Labor Relations Board, 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958). And this is so even if one of the objects of these statements might have been to improve the wage level and working conditions of Consalvo's employees. National Labor Relations Board v. Bangor Building Trades Council, 278 F.2d 287 (C.A. 1, 1960).

■ 15. In its brief, Local 379 urges strenuously that plaintiff has failed to show that interstate commerce would be affected by this strike. There are two answers to this contention. The plaintiff did show, through uncontradicted testimony, that business which Consalvo performed in the building and construction industry in 1960 amounted to $110,000 with, inter alia, Ox-Bow, which in 1960 had engaged in construction work estimated at $1,000,000. The general contractor in the construction of the Common garage, Foundation, is a New York corporation. Considering the size of the construction project involved, it is reasonable to infer on the basis of the evidence referred to that interstate commerce would have been affected by the strike. N. L. R. B. v. White Const. & Eng. Co., 204 F.2d 950 (5 Cir. 1953); International Brotherhood of Elec. Workers v. N. L. R. B., 181 F.2d 34 (2 Cir.), aff'd. 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951); Denver Bldg. & Const. Trades Council v. N. L. R. B., 87 U.S.App.D.C. 293, 186 F.2d 326 rev. on other grounds 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951).

■ 16. Over and above this, however, the second flaw in the defendant's argument is the fact that Local 379 was a respondent in this very Court in a Section 10(l) proceeding arising out of this identical conduct. In an opinion handed down in that case on May 26, 1960, Alpert, for and on behalf of N. L. R. B. v. Excavating and Building Material Chauffeurs and Helpers Union No. 379, International Brotherhood of Teamsters,

Chauffeurs, Warehousemen of America, 184 F.Supp. 558, 560, Judge Wyzanski stated, "Consalvo Trucking Inc. is a corporation purchasing and trucking fill dirt. The parties have conceded that its activities affect commerce." A threshold question before Judge Wyzanski in that case was whether or not, on April 20, 1960, Consalvo was engaged in interstate commerce. Defendant's concession of jurisdiction in the hearing before Judge Wyzanski was a shorthand method of conceding that Consalvo's business affected interstate commerce. Hence, defendant cannot now deny that Consalvo was so engaged. Temple v. Lumber Mutual Casualty Ins. Co. of New York, 250 F.2d 748 (3 Cir. 1958); Hyman v. Regenstein, 258 F.2d 502, 509–510 (5 Cir.), cert. den. 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959).

I find there has been a clear violation of 29 U.S.C.A. § 187(a).